CLERK'S OFFICE U.S. DIST. COURT
AT DANVILLE, VA
FILED

OCT 18 2016

JULIA C. DUDLEY, CLERK
BY: s/H. McDonald
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
Danville Division

| | |
|---|---|
| CONSTANCE HARRIS, ) | |
| Plaintiff, ) | |
| ) | Civil Action No. 4:15-cv-30 |
| v. ) | |
| ) | REPORT AND RECOMMENDATION |
| CAROLYN W. COLVIN, ) | |
| Acting Commissioner of Social Security, ) | By: Joel C. Hoppe |
| Defendant. ) | United States Magistrate Judge |

Plaintiff Constance Harris asks this Court to review the Commissioner of Social Security's ("Commissioner") final decision denying her applications for disability insurance benefits ("DIB") and supplemental security income ("SSI") under Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 401–434, 1381–1383f. The case is before me by referral under 28 U.S.C. § 636(b)(1)(B). ECF No. 12. Having considered the administrative record, the parties' briefs, and the applicable law, I find that substantial evidence supports the Commissioner's decision that Harris is not disabled. Therefore, I recommend that the Court **DENY** Harris's Motion for Summary Judgment, ECF No. 13, **GRANT** the Commissioner's Motion for Summary Judgment, ECF No. 15, and **AFFIRM** the Commissioner's final decision.

I. Standard of Review

The Social Security Act authorizes this Court to review the Commissioner's final decision that a person is not entitled to disability benefits. *See* 42 U.S.C. § 405(g); *Hines v. Barnhart*, 453 F.3d 559, 561 (4th Cir. 2006). The Court's role, however, is limited—it may not "reweigh conflicting evidence, make credibility determinations, or substitute [its] judgment" for that of agency officials. *Hancock v. Astrue*, 667 F.3d 470, 472 (4th Cir. 2012). Instead, the Court asks only whether the Administrative Law Judge ("ALJ") applied the correct legal standards and

1

whether substantial evidence supports the ALJ's factual findings. *Meyer v. Astrue,* 662 F.3d 700, 704 (4th Cir. 2011).

"Substantial evidence" means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). It is "more than a mere scintilla" of evidence, *id*., but not necessarily "a large or considerable amount of evidence," *Pierce v. Underwood*, 487 U.S. 552, 565 (1988). Substantial evidence review takes into account the entire record, and not just the evidence cited by the ALJ. *See Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487–89 (1951); *Gordon v. Schweiker*, 725 F.2d 231, 236 (4th Cir. 1984). Ultimately, this Court must affirm the ALJ's factual findings if "conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled." *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005) (per curiam) (quoting *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996)). However, "[a] factual finding by the ALJ is not binding if it was reached by means of an improper standard or misapplication of the law." *Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987).

A person is "disabled" if he or she is unable to engage in "any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); 20 C.F.R. §§ 404.1505(a), 416.905(a). Social Security ALJs follow a five-step process to determine whether an applicant is disabled. The ALJ asks, in sequence, whether the applicant (1) is working; (2) has a severe impairment; (3) has an impairment that meets or equals an impairment listed in the Act's regulations; (4) can return to his or her past relevant work based on his or her residual functional capacity; and, if not (5) whether he or she can perform other work. *See Heckler v. Campbell*, 461

2

U.S. 458, 460–62 (1983); 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The applicant bears the burden of proof at steps one through four. *Hancock*, 667 F.3d at 472. At step five, the burden shifts to the agency to prove that the applicant is not disabled. *See id.*

## II. Procedural History

Harris applied for DIB and SSI on January 30, 2012, alleging disability caused by high blood pressure, injury to the rotator cuff in her right shoulder, and chronic impingement and arthritis of the right acromioclavicular ("AC") joint. Administrative Record ("R.") 69, 78, ECF No. 9. She claimed onset of her disability on March 28, 2011, at which time she was fifty-eight years old. *Id.* She had previously worked as a machine operator and as a certified nursing assistant ("CNA"). R. 218–26. Disability Determination Services ("DDS"), the state agency, denied Harris's claim at the initial and reconsideration stages. R. 69–86, 89–110. On January 16, 2014, she appeared with counsel at an administrative hearing before ALJ Mary C. Peltzer. R. 26–54. The ALJ heard testimony from Harris, R. 31–49, and a vocational expert ("VE"), R. 49–53.

ALJ Peltzer denied Harris's claim in a written decision issued on February 11, 2014. R. 12–21. She found that Harris had severe impairments of post-operative right shoulder disorder, including degenerative changes of the AC joint and full thickness tear of the rotator cuff, essential hypertension, and obesity; Harris's other impairments, including possible carpal tunnel syndrome in the left wrist, diabetes mellitus, anemia, and allergic rhinitis, were found to be nonsevere. R. 14. The ALJ next determined that none of Harris's impairments, alone or in combination, met or medically equaled the severity of a listed impairment. R. 14–16. ALJ Peltzer then found that Harris had the residual functional capacity ("RFC")[1] to perform light work[2] with

---

[1] A claimant's RFC is the most he or she can do on a regular and continuing basis despite his or her impairments. 20 C.F.R. §§ 404.1545(a), 416.945(a); SSR 96-8p, 1996 WL 374184, at *1 (July 2, 1996).

some postural limitations, including only occasional pushing and pulling with the right upper extremity and no overhead reaching with that extremity. R. 16–20. Based on this RFC and the VE's testimony, the ALJ determined that Harris could not perform her past work as a CNA, but could perform her past work as a sewing machine operator as that work is generally performed. She therefore concluded that Harris was not disabled. R. 20. The Appeals Council declined Harris's request for review, R. 1–3, and this appeal followed.

III. Discussion

On appeal, Harris contends that the ALJ's RFC determination was erroneous because it did not fully account for the limiting effects of her right shoulder condition.[3] Specifically, she argues that the ALJ did not properly reconcile the conflicting opinions of the medical experts, Pl. Br. 4–9, ECF No. 14, and failed to conduct a function-by-function assessment as required under the regulations, *id.* at 9–11.

A.  Relevant Facts

1.  *Medical Records*

Harris first injured her right shoulder at work in December 2009 while trying to move a patient. R. 328. In January 2010, she began treating with Michael Kyles, M.D., who provided her

---

[2] "Light" work involves lifting no more than twenty pounds at a time, but frequently lifting objects weighing ten pounds. 20 C.F.R. §§ 404.1567(b), 416.967(b). A person who can meet these lifting requirements can perform light work only if she also can "do a good deal of walking or standing, or do some pushing and pulling of arm or leg controls while sitting." *Hays v. Sullivan*, 907 F.2d 1453, 1455 n.1 (4th Cir. 1999).

[3] Harris also contends that the ALJ erred by failing to consider the limiting effects of her nonsevere left wrist impairment. Pl. Br. 11–12. This objection is not persuasive, however, as the ALJ observed in her discussion of Harris's RFC that Harris effectively controlled her wrist pain with over-the-counter pain medication and concluded that this undermined her complaints of more serious symptoms. R. 18–19. Furthermore, nothing in the medical records indicates that Harris's wrist condition imposed any functional limitations. The record shows that Harris reported occasional left wrist pain, R. 329 (wrist tenderness in September 2010), 351 (no wrist joint tenderness in December 2012), 358 (no wrist joint tenderness in August 2013), and examination of her wrist showed no objective signs of carpal tunnel syndrome, R. 339. Thus, the ALJ did not err in not including restrictions in Harris's RFC related to her left wrist.

4

with forms excusing her from work. R. 311–16, 323. Dr. Kyles noted that Harris's work as a CNA required a lot of lifting. R. 323. An MRI taken on February 10 showed a full thickness tear of the rotator cuff and moderate to severe degenerative change of the AC joint. R. 290, 322. During this time, Harris experienced pain and limited range of motion, and she was unable to do any of the lifting required for her work as a CNA. R. 322–23. Dr. Kyles recommended surgery, R. 322, and on April 21 he performed an open acromioplasty of the right shoulder, repair of the rotator cuff tear, and distal clavicle resection, R. 298–99.

On April 29, Harris followed up with Dr. Kyles, who opined that she could immediately return to work if her employer would accommodate her restriction of not using her right upper extremity; otherwise, he stated that Harris could return to her pre-injury level of exertion in about three months. R. 314, 320. Over the next few months, Harris continued working under this restriction, and in the meantime made significant progress in her recovery through physical therapy. R. 319–20, 327. On September 7, Dr. Kyles noted a little swelling in Harris's shoulder and attributed it to her increase in lifting up to forty pounds in therapy. R. 327. He discontinued increasing weights and allowed her to return to her regular work duties. *Id.* On September 21, Harris informed Dr. Kyles that she had returned to regular-duty work, but heavy pushing and some odd jobs taking care of patients caused shoulder pain. R. 326. Dr. Kyles noted that Harris had good range of motion in her shoulder and her rotator cuff was intact, but her shoulder was a little puffy. Harris was taking Motrin for pain, and Dr. Kyles determined that Harris had not suffered a new injury and required no additional "workup." Dr. Kyles restricted her work activities to no more than twenty-five pounds of pushing or lifting with the right upper extremity. *Id.* Harris returned to Dr. Kyles on October 22 and reported that she had been working with the right upper extremity lifting restriction. R. 325. Harris reported some aching in her right

shoulder, but her range of motion was "fairly good." Dr. Kyles administered a steroid injection, which provided some relief, and Harris declined pain medication. *Id.* On January 6, 2011, Dr. Kyles completed a "Disability Certificate" stating that Harris's current work restrictions were permanent. R. 317. The record contains no further evidence of treatment for Harris's shoulder condition, and physical examination findings at subsequent doctors' visits were unremarkable with regard to Harris's shoulder. *See* R. 332 (March 10, 2011); R. 351 (December 22, 2012); R. 358 (August 20, 2013).

    2.    *Physicians' Opinions*

Dr. Kyles completed a form for submission to the Virginia Employment Commission on April 3, 2011. He stated that Harris had been incapacitated and totally unable to perform any work from January 27, 2010, through September 12, 2010, after which time she returned to regular duty work. Dr. Kyles further stated that Harris could currently perform work, but she had permanent restrictions of no lifting more than twenty-five pounds with the right arm and light pushing. R. 334.

On May 12, 2012, Virginia Department of Rehabilitative Services consulting physician David Boone, D.O., examined Harris. R. 336–40. Harris informed Dr. Boone that Dr. Kyles had put her on a twenty-five pound lifting restriction, which she thought was accurate and could be done without pain and difficulty, but she further explained that she had lost her CNA job and could not find other work because of the restriction. R. 336. She stated that she took over-the-counter Motrin on most days and that this adequately controlled the pain in her shoulder (as well as the pain in her left wrist). R. 337. Harris's shoulder range of motion was within ordinary limits, although external rotation caused some pain, and she exhibited tenderness over the right deltoid bursa. She had +5/5 strength in her upper extremities, including bilateral hand grip. R.

6

339. Dr. Boone opined that Harris could lift and carry ten pounds occasionally and less than ten pounds frequently. He found that she could not reach overhead frequently, but also determined that she did not have manipulative limitations. R. 340.

On June 1, DDS expert Martin Cader, M.D., reviewed Harris's medical records as part of the initial evaluation of her claim. Dr. Cader determined that Harris could lift and carry twenty pounds occasionally and ten pounds frequently, but was otherwise unlimited in her ability to push and pull. He also found that she was limited in her ability to reach in front, laterally, and overhead with her right upper extremity (although he also stated that she could do frequent overhead reaching). R. 74–76, 83–85. On reconsideration, DDS reviewer James Wickham reaffirmed Dr. Cader's opinion in all relevant parts, except that he did not acknowledge any limitation to Harris's ability to reach in front or laterally with her right upper extremity. R. 95–96, 106–07.

### 3. *Harris's Submissions and Testimony*

As part of her disability application, Harris submitted a function report on February 24, 2012. R. 231–38. She stated that the pain in her shoulder caused difficulty with dressing, bathing, caring for her hair, and using the toilet. R. 232. She could cook meals, do laundry, iron, perform light housework, and shop for groceries and personal items. R. 233–34. Harris stated that she could not raise her right arm overhead and, per Dr. Kyles's order, she could not lift anything over twenty-five pounds. R. 236. She noted that this lifting restriction limited her ability to find other employment, as the jobs she applied to required her to be able to lift at least forty pounds. R. 238.

At her hearing before ALJ Peltzer, Harris stated that she experienced pain in her shoulder even when lifting two-pound weights or carrying the groceries into her house, and she claimed

that she could not lift twenty-five pounds, but instead only ten to fifteen pounds. R. 35–36. Harris also stated that she experienced pain while tending to her garden and sweeping the floor. R. 37. She claimed that she could handle her personal care by herself and could wash clothes, clean the floors, and cook meals. R. 41.

B.  Analysis

Harris first challenges the ALJ's weighing of the medical opinion evidence. An ALJ must consider and evaluate all opinions from "medically acceptable sources," such as doctors, in the case record. 20 C.F.R. §§ 404.1527, 416.927. The regulations classify medical opinions by their source: those from treating sources and those from non-treating sources, such as examining physicians and state-agency medical consultants. *See id.* §§ 404.1527(c), 416.927(c). A treating physician's opinion is entitled to controlling weight if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and "not inconsistent with the other substantial evidence in the record." *Mastro v. Apfel*, 270 F.3d 171, 178 (4th Cir. 2001); 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). An ALJ may reject a treating physician's opinion in whole or in part if there is "persuasive contrary evidence" in the record. *Hines*, 453 F.3d at 563 n.2; *Mastro*, 270 F.3d at 178.

The ALJ must "give good reasons" for discounting a treating physician's medical opinion. 20 C.F.R. §§ 404.1527(c), 416.927(c). Furthermore, in determining what weight to afford a treating source's opinion, the ALJ must consider all relevant factors, including the relationship between the doctor and the patient, the degree to which the opinion is supported or contradicted by other evidence in the record, and whether the doctor's opinion pertains to his area of specialty. 20 C.F.R. §§ 404.1527(c), 416.927(c). That obligation is satisfied when the ALJ's decision indicates that he considered the required factors. *Burch v. Apfel*, 9 F. App'x 255,

259 (4th Cir. 2001) (per curiam); *see also Vaughn v. Astrue*, No. 4:11cv29, 2012 WL 1267996, at *5 (W.D. Va. Apr. 13, 2012), *adopted by* 2012 WL 1569564 (W.D. Va. May 3, 2012). The ALJ must consider the same factors when weighing medical opinions from non-treating sources. 20 C.F.R. §§ 404.1527(c), 404.1527(e)(2), 416.927(c), 416.927(e)(2).

In her discussion of Harris's RFC, the ALJ weighed the opinions of Dr. Kyles, Dr. Boone, and the DDS experts. She gave controlling weight to Dr. Kyles's opinion that Harris could lift up to twenty-five pounds with the right arm and perform light pushing, finding that these restrictions were "consistent with and supported by the record, including [Dr. Kyles's] own treatment notes." R. 19. She gave partial weight to Dr. Boone's opinion, but also noted that "the record as a whole supports the claimant can lift/carry more than 10 pounds occasionally." R. 19–20. Finally, she afforded "great weight" to the opinions of the DDS experts, finding that they were "consistent with and supported by the other evidence of record, to include the claimant's activities of daily living and the objective findings of record." R. 20. Nonetheless, she opted to "provide[] the claimant with maximum benefit by adding further limitations," *id.*, particularly by limiting Harris to no overhead reaching and only occasional pushing and pulling with the right upper extremity, R. 16.

Harris contends that the ALJ did not adequately explain how she reconciled the discrepancy between Dr. Boone's opinion and those of the DDS experts as to the amount of weight Harris could lift or carry, and furthermore that the ALJ did not cite substantial evidence to support her rejection of Dr. Boone's opinion that Harris could only occasionally lift ten pounds.[4] As Harris correctly notes, the ALJ provided little more than a cursory explanation for her decision to give greater weight to the DDS experts' opinions than to Dr. Boone's opinion.

---

[4] Such an error would be material, as a restriction of occasionally lifting only ten pounds and frequently lifting less than ten pounds would be incompatible with the requirements for light work, and would, according to the VE's testimony, preclude Harris from performing her past relevant work. R. 51, 53.

9

Additionally, Harris's activities of daily living, such as light housework and shopping for groceries and clothing, are consistent with being able to meet the lifting requirements of light work, but they also do not necessarily establish that lifting ability. Nonetheless, any discrepancy with regard to Harris's lifting restrictions can be explained by the ALJ's decision to give controlling weight to the opinion of Dr. Kyles, Harris's treating physician, who opined that Harris could lift a maximum of twenty-five pounds.

The treatment record supports Dr. Kyles's opinion. Dr. Kyles noted that after her surgery, Harris made continued progress with her physical therapy, which at one point included lifting up to forty pounds. R. 327. Although Harris had difficulty returning to full-duty work as a CNA, she did not report any problems after working with a twenty-five-pound lifting limitation. Furthermore, she informed Dr. Boone that she believed this limitation to be appropriate. In addition, as the ALJ noted, Harris's conservative course of treatment and unremarkable findings on physical examination supported a finding that she was not as limited as alleged. By contrast, the only evidence of record that contradict Dr. Kyles's lifting restrictions are Harris's own descriptions of her functioning, which the ALJ found to be less than fully credible, R. 18–19, and Dr. Boone's opinion, which, unlike Dr. Kyles's opinion, was not based on a longstanding treatment relationship with Harris. Because the ALJ was justified in giving controlling weight to Dr. Kyles's opinion—including his finding that Harris could lift up to twenty-five pounds—her decision not to adopt Dr. Boone's more limited lifting restriction is supported by substantial evidence.

For the same reasons, Harris's argument that the ALJ erred by failing to conduct a function-by-function analysis is unpersuasive. In assessing a claimant's RFC, the ALJ "must first identify the individual's functional limitations or restrictions and assess his or her work-related

10

abilities on a function-by-function basis" before the RFC may be stated "in terms of the exertional levels of work, sedentary, light, medium, heavy, and very heavy." *Mascio v. Colvin*, 780 F.3d 632, 636 (4th Cir. 2015) (quoting SSR 96-8p, 1996 WL 374184, at *1 (July 2, 1996)). The ALJ's RFC assessment "must include a narrative discussion describing" how specific medical facts and nonmedical evidence "support[] each conclusion" in the RFC finding. *Id.* (quoting SSR 96-8p, 1996 WL 374184, at *7). Remand should be considered "where an ALJ fails to assess a claimant's capacity to perform relevant functions, despite contradictory evidence in the record, or where other inadequacies in the ALJ's analysis frustrate meaningful review." *Id.* (quoting *Cichocki v. Astrue*, 729 F.3d 172, 177 (2d Cir. 2013)).

In this case, the ALJ's decision to give controlling weight to Dr. Kyles's medical opinion, including his finding that Harris could lift up to twenty-five pounds, is amply supported by the record. Because this provides support for the ALJ's determination as to Harris's ability to lift and carry, and because Harris does not challenge the ALJ's findings regarding the other demands of light work, *see* Pl. Br. 10, her objection to the ALJ's failure to conduct an explicit function-by-function analysis is unfounded.

IV. Conclusion

For the foregoing reasons, I find that the ALJ's decision is supported by substantial evidence. Accordinlgy, I respectfully recommend that Harris's motion for summary judgment, ECF No. 13, be **DENIED**, the Commissioner's motion for summary judgment, ECF No. 15, be **GRANTED**, the Commissioner's final decision be **AFFIRMED**, and this case be **DISMISSED** from the Court's active docket.

**Notice to Parties**

Notice is hereby given to the parties of the provisions of 28 U.S.C. § 636(b)(1)(C):

Within fourteen days after being served with a copy [of this Report and Recommendation], any party may serve and file written objections to such proposed findings and recommendations as provided by rules of court. A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge may also receive further evidence or recommit the matter to the magistrate judge with instructions.

Failure to file timely written objections to these proposed findings and recommendations within 14 days could waive appellate review. At the conclusion of the 14 day period, the Clerk is directed to transmit the record in this matter to the Honorable Jackson L. Kiser, Senior United States District Judge.

The Clerk shall send certified copies of this Report and Recommendation to all counsel of record.

ENTER: October 18, 2016

Joel C. Hoppe
United States Magistrate Judge